PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROY JONES, | ) | |
| | ) | CASE NO. 1:13cv2809 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF No. 17] |

Pending before the Court is a motion for summary judgment filed by Defendant Ford Motor Company. ECF No. 17. The Court has been advised, having reviewed the record, including the parties' briefs and the applicable law. For the reasons that follow, the Court grants Defendant's motion for summary judgment.

**I. Factual and Procedural Background**

Ford hired Plaintiff on February 5, 1985, as a production supervisor at Ford's Walton Hills, Ohio Stamping Plant. ECF No. 17-2 at PageID #: 148–49, p.89, 91. Plaintiff was a salaried, non-union, at-will employee. ECF No. 17-3 at PageID #: 236, ¶ 3. By the time of his termination at age 59, Plaintiff had been promoted to supervisor with the title of Senior Process Coach. ECF Nos. 17-2 at PageID #: 148 p.89; 19-1 ¶ 86. He reported to Press Room Manager Leslie Stuck. ECF No. 17-2 at PageID # 150, p.97. As a Senior Process Coach, Plaintiff was responsible for supervising about twenty hourly production employees in the Plant's press room. ECF No. 17-2 at PageID #: 149, p.93. He was responsible for providing safety training to

(1:13cv2809)

subordinate employees, overseeing the quality of the product being produced, and identifying equipment in need of maintenance.  ECF No. 17-2 at PageID #: 149, p.90.

There is evidence that during his career at Ford, Plaintiff received numerous pay raises for performance, and the plant manager Richard Showman confirmed that Plaintiff "did a good job, [] worked the hours required, [was] never late, [and] [] accepted all the overtime."  ECF No. 21 at PageID #: 775.  Showman's testimony indicates that in terms of performance, Plaintiff was an example of how to do the job right.  ECF No. 21 at PageID #: 774.

There is also evidence to show that while employed by Ford, Plaintiff was disciplined on a number of occasions:

- In July 1995, Plaintiff was investigated for using sexually explicit and harassing language with two female employees.  He was disciplined in the form of a letter of reprimand.  ECF No. 17-2 at PageID #: 151, p.103.

- In August 1998, Plaintiff was investigated for using abusive and disrespectful language toward other employees.  He was suspended for two weeks.  ECF No. 17-2 at PageID #: 174.

- In May 2003, Plaintiff was investigated for using profanity toward an hourly employee.  He received a documented coaching and counseling.  ECF No. 17-4 at PageID #: 323.

- In January 2005, Plaintiff was investigated for directing abusive language and intimidation towards an employee.  He was suspended for one week.  ECF No. 17-2 at PageID #: 175–76.

- In March 2005, Plaintiff was investigated for using abusive language toward an hourly employee.  He received a documented coaching and counseling.  ECF Nos. 17-2 at PageID #: 153, p.111; 17-4 at PageID #: 324.

- In May 2005, Plaintiff was investigated for being verbally abusive towards a female hourly employee.  An interoffice memo indicated that he was reminded to treat employees respectfully.  ECF No. 17-4 at PageID#: 325.

2

(1:13cv2809)

- In September 2006, Plaintiff was investigated for "repeatedly show[ing] unwanted, unwelcome attention" towards a female co-worker after being told he was to have no further contact with her.  He was suspended for one week.  ECF No. 17-2 at PageID #: 177.

- In March 2007, Plaintiff was investigated for a harassment complaint filed by an hourly employee.  He received counseling regarding the allegations of harassment.  ECF No. 17-4 at PageID#: 326.

- In May 2007, Plaintiff was advised on the company's policy for appropriate conversation, his past discipline, and the company's policy on retaliation.  ECF No. 17-4 at PageID #: 327.

- In September 2007, Plaintiff was investigated for engaging in verbal sexual harassment with two female employees.  He was suspended for four weeks.  ECF No. 17-2 at PageID #: 178.

- In November 2007, Plaintiff was investigated for committing an ECPL safety violation.  He received a documented coaching and counseling.  ECF No. 17-2 at PageID #: 179–80.

- In October 2012, Plaintiff was investigated for using profane language towards an hourly employee, but he was not disciplined due to a lack of corroborating witnesses.  ECF No. 17-2 at PageID #: 160–61, p.145–47; 17-2 at PageID #: 199, p.54.

On December 6, 2012, Plaintiff was involved in another incident that resulted in discipline.  A mechanical issue arose on the line which required another employee, Ronald Frigy, to make a repair.  ECF No. 17-3 at PageID #: 239.  After being told by Frigy that the repair could take several hours, Plaintiff allegedly called Frigy a "dickhead."  Id.  Frigy suggested they take the dispute to Labor Relations, but Plaintiff refused.  Id. at PageID #: 241.  Plaintiff allegedly stated "come on, let's go," while allegedly waving his hands in the air in an aggressive manner.  Id. at PageID# 242.  Frigy allegedly interpreted this behavior as a threat.  Id.

After an investigation, it was determined that Plaintiff's unprofessional comment and

3

(1:13cv2809)

intimidating behavior, having been corroborated by a witness, was a violation of Ford's anti-harassment policy and corporate code of conduct.  ECF No. 17-2 at PageID #: 206–07, p.81–85.  Given his history of discipline, it was decided that Plaintiff would be suspended for four weeks.  *Id.*  He served his suspension from January 14, 2013 through February 10, 2013.  ECF No. 17-2 at PageID #: 163, p.154.

On May 2, 2013, Plaintiff was involved in another incident, this time, one involving a violation of the plant safety rules.  ECF No. 17-2 at PageID #: 266, p.176.  A stamping press was shut down due to a buildup of metal scrap.  ECF No. 17-2 at PageID #: 167, p.178.  In order to clear the scrap, it was necessary for someone to enter a caged area called an "automation cell."  ECF No. 17-2 at PageID #: 155, p.118.  According to Defendant, because of the life-threatening danger associated with robotic stamping presses, Ford has an Energy Control and Power Lockout ("ECPL") policy that must be followed before anyone may enter an automation cell.  ECF No. 17-4 at PageID #: 334–35, ¶ 3.  All employees whose job requires them to enter a cell are assigned personal locks, inscribed with the last four digits of the social security or Ford global ID numbers.  *Id.* ¶ 4.  Employees must lock out the power to the robotic equipment before opening the gate and entering the cell.  One the power to the robots is locked out, the robots can no longer cycle.  ECF No. 17-2 at PageID #: 168, p.183–84.

Often there are several sources of power to the equipment, and each power source must be locked out by each employee entering the automation cell.  ECF No. 17-4 at PageID #: 334–35, ¶ 3.  Many employees are assigned several personal locks so that each employee can place his own lock on each of the power sources.  According to Defendant, employees must

4

(1:13cv2809)

maintain control of the keys to the locks. Ford asserts that its ECPL manual and various training materials provide that an employee must use his own lock and should never lend or borrow a safety lock. ECF No. 17-4 at PageID #: 335, ¶ 5. Ford maintains that these safety measures ensure that another employee cannot turn the power back on while another employee remains in the automation cell. Id.

As an additional safety measure, Ford's Personal Protective Equipment and Clothing ("PPE") policy provides that any employee who enters an atuomation cell must wear a "bump cap" (similar to a construction hard hat) to protect his head from injury. ECF No. 17-4 at PageID #: 335, ¶ 7.

On May 2, 2013, Plaintiff allegedly instructed hourly employee John Schneider to lend Plaintiff his personal lock. ECF No. 17-2 at PageID #: 168, p.184–85. Plaintiff admitted during his deposition he borrowed and used Schneider's lock and that he was not wearing his bump cap while in the automation cell. ECF No. 17-2 at PageID #: 170, p.190.

The incident was reported to Walton Hill's Human Resources Manager, and an investigation was initiated. ECF Nos. 17-2 at PageID #: 169, p.188; 17-3 at PageID #: 236, ¶ 8. Tyra Grier-Coleman, who oversaw the investigation, interviewed Schneider, who indicated that Plaintiff directed him to lend him his lock and that Plaintiff was not wearing a bump cap in the automation cell. ECF No. 17-3 at PageID #: 280–81. In a written statement to Grier-Coleman, Plaintiff stated that he instructed Schneider to lend him his personal lock because Plaintiff "did not have [his] safety lock." ECF No. 17-2 at PageID #: 194.

Grier-Coleman consulted with Thomas Kendall (the Regional Safety and Security

(1:13cv2809)

Manager), Harry Tarrant (then-Manager, Occupational Health and Safety), and Viscomi (Plant Safety, Security, and Fire Supervisor) about the seriousness of the incident. ECF No. 17-3 at PageID #: 237, ¶ 10. Based on Grier-Coleman's initial factual findings, Viscomi concluded that both the Energy Control and Power Lockout ("ECPL") policy and the Personal Protective Equipment and Clothing ("PPE") policy had been violated. ECF No. 17-4 at PageID #: 366. Kendall determined that Plaintiff violated two clearly defined work rules when he borrowed Schneider's lock, and Tarrant concurred, noting that it was a "flagrant violation" of ECPL policy. ECF No. 17-3 at PageID #: 315–16. According to Viscomi, a safety violation is flagrant if (1) it is a violation of a safety standard; (2) the violation could lead to serious injury; and (3) the employee had training and understood the safety standard. ECF No. 17-4 at PageID #: 336, ¶ 10.

Grier Coleman conferred with Zapatito Jimenez in Personnel Relations as to the appropriate discipline for Plaintiff. ECF No. 17-3 at PageID #: 237, ¶ 12. Grier-Coleman and Jimenez considered Plaintiff's disciplinary history, and they decided that termination was the appropriate response. *Id.*; ECF No. 17-2 at PageID #: 217, p.197–98.

On June 7, 2013, Showman and Viscomi met with Plaintiff and informed him that he was being discharged for the May 2, 2013 incident. ECF No. 17-2 at PageID #: 170, p.191–92. Following Plaintiff's termination, Ford replaced Jones with Richard Rericha, who was age 62 at the time. ECF No. 17-3 at PageID #: 237, ¶ 13.

Plaintiff filed the instant complaint in Cuyahoga County Court of Common Pleas, and this matter was removed to this Court on the basis of diversity. ECF No. 1-1. Plaintiff asserts the following causes of action: (1) Age Discrimination under R.C. § 4112.02(A), (2) Wrongful

6

(1:13cv2809)

termination based on age discrimination under R.C. § 4112.02(A) (3) Wrongful termination in violation of public policy, and (4) Intentional infliction of emotional distress.  Defendant moves for summary judgment on all claims.  ECF No. 17.  Plaintiff opposed (ECF No. 19); Defendant replied.  ECF No. 26.  This matter is ripe for adjudication.

## II.  Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also* Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  Guarino v. Brookfield Twp. Trustees, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  Cox v. Ky. Dep't of Transp., 53 F.3d 146, 150 (6th Cir. 1995).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must evaluate whether the evidence

(1:13cv2809)

could persuade a reasonable factfinder that the non-moving party is entitled to a verdict. *Id.*

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

### III.  Analysis

#### A.  Claims Abandoned by Plaintiff

Defendant asserts that summary judgment is appropriate as to Plaintiff's claims of intentional infliction of emotional distress and wrongful termination in violation of public policy on the ground that Plaintiff has abandoned these claims. ECF No. 26 at PageID #: 997. A claim may be deemed abandoned when a party asserts a claim in its complaint but fails to address the issue in response to a motion for summary judgment. *See Graham v. American Cyanamid Co.*, 350 F.3d 496, 506 (6th Cir. 2003) (affirming the district court's holding that the plaintiffs had abandoned their fraud claim by failing to respond to the defendant's summary judgment motion on the claim); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (explaining that a party opposing a motion for summary judgment may not "rely on the hope that the trier of fact

8

(1:13cv2809)

will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion).

In this instance, Plaintiff's opposition brief outlines the specific issues which, he claims, require submission to a jury. ECF No. 19 at PageID #: 376. These include his claim that he was denied a transfer opportunity based on discriminatory animus and his claim that his employment was terminated based on discriminatory animus. Plaintiff's opposition brief does not address Defendant's contention that summary judgment is appropriate for his claims of intentional infliction of emotional distress and wrongful discharge in violation of public policy. Plaintiff has, therefore, abandoned these claims, making summary judgment in favor of Ford appropriate.

### B. Age Discrimination under O.R.C. § 4112

Plaintiff brings a claim of age discrimination under Ohio Revised Code Chapter 4112(A), which states that it is unlawful

> [f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment

R.C. § 4112.02(A). There are two ways to prove a discrimination claim: either by direct or by circumstantial evidence. *Byrnes v. LCI Communication Holdings Co.*, 672 N.E.2d 145, 148 (1996). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*) (internal quotation marks omitted). "Circumstantial evidence, on the other hand, is proof that

9

(1:13cv2809)

does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*  When a plaintiff cannot prove discrimination by way of direct evidence, the three-step burden shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) guides the analysis of discrimination claims based on circumstantial evidence. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).  In *Gross v. FBL Financial Services, Inc.*, the Supreme Court emphasized that with both direct and circumstantial evidence, the burden of persuasion remains on ADEA plaintiffs to demonstrate "that age was the 'but-for' cause of their employer's adverse action."  557 U.S. 167, 178 n.4 (2009).

Plaintiff asserts his discrimination claim based on two theories.  First, he argues the defendant discriminated against him based on age when the defendant discharged him.  Second, he argues that he was discriminated against when the defendant failed to offer him transfer opportunities because of his age.  The Court addresses each theory in turn.

### 1. Discriminatory Discharge

To prove a claim of age discrimination using circumstantial evidence, a plaintiff must make out a *prima facie* case of discrimination by showing that: (1) he was forty years old or older, (2) he was qualified for the position, (3) he was discharged, and (4) he was replaced by a person outside the protected class, or that similarly situated younger employees received more favorable treatment. *Geiger v. Tower Auto*, 579 F.3d 614, 622–23 (6th Cir. 2009).

In this case, Defendant maintains that Plaintiff is unable to satisfy the fourth element of the *prima facie* case.  It is undisputed that Plaintiff was replaced by Richard Rericha, who was

(1:13cv2809)

age 62 at the time of replacement.  Therefore, in order to satisfy the fourth element, Plaintiff must provide evidence that similarly situated younger employees received more favorable treatment.  To be deemed similarly situated, a plaintiff must "prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the [employee] who he alleges [was] treated more favorably."  *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004).  This requirement does not mean that Plaintiff must "demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated'; rather . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.'"  *Ercegovich*, 154 F.3d at 352 (citing *Pierce*, 40 F.3d at 802).

Plaintiff identifies Ford employee Bruce Toburen as a potential comparable.  *See* ECF No. 19 at PageID #: 385.  According to Plaintiff, Toburen engaged in conduct similar to that of Plaintiff, but Toburen was treated more favorably than Plaintiff.  Plaintiff points out that Toburen was involved in a near-miss accident in which he instructed two hourly employees to enter a cell in violation of the ECPL policy.  *Id.*  There is evidence to show that after committing this violation, Toburen was not disciplined.  *Id.*  There are two problems with using Toburen as a comparable.  Plaintiff provides no evidence or argument to support the claim that the two men are similarly situated.  As important, assuming that Toburen is similarly situated to Plaintiff, it is undisputed that Toburen, who was born in 1953, is older, not younger, than Plaintiff.  *See* ECF No. 17-3 at PageID #: 237, ¶ 14.  The Court accordingly rejects Plaintiff's suggestion that he is similarly situated to Toburen.

(1:13cv2809)

Schneider, the hourly employee who was involved in the incident that led to Plaintiff's termination, is another potential comparable. ECF No. 19 at PageID #: 384. Schneider, however, is not similarly situated. It is undisputed that Schneider is an hourly union employee subject to a collective bargaining agreement between Ford and the United Auto Workers. ECF No. 17-2 at PageID #: 208, p.99. Plaintiff was not a member of the union. Therefore, because Plaintiff and Schneider are not subject to the same terms and conditions of employment, they are not similarly situated. See *Marshall v. W. Grain Co.*, 838 F.2d 1165, 1170 (11th Cir. 1988) ("because of their unique status in the workplace, bargaining unit employees are never similarly situated with non-bargaining unit employees"). Moreover, Plaintiff and Schneider are dissimilar because Plaintiff was acting as Schneider's supervisor when Plaintiff instructed Schneider to lend him his personal safety lock. Plaintiff has failed to supply evidence to support a *prima facie* case that he was discharged on the basis of his age.

Plaintiff also maintains that he has provided direct evidence of discrimination. The evidence cited by the plaintiff includes Jones's testimony that his supervisor, Stuck, was promoted based on the understanding that Stuck would retire when the Walton Hills plant closed. ECF No. 17-2 at PageID #: 157, p.130–31. In addition, Plaintiff asserts that only one employee in the position of Senior Process Coach was able to transfer. ECF No. 19 at PageID #: 391. This is not direct evidence of discrimination. As noted above, "[d]irect evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler*, 317 F.3d at 570 (quotation marks omitted). No reasonable jury could conclude that Plaintiff's termination was motivated by

12

(1:13cv2809)

discriminatory animus based on evidence that Stuck was promoted with the understanding that he would retire when the plant closed. The evidence relating to the circumstances of Stuck's promotion is unrelated to Ford's decision to terminate Jones. Nor could a reasonable jury conclude that Ford was impermissibly discriminated against Plaintiff because only one Senior Process Coach transferred to a new position. Plaintiff does not provide direct evidence of discrimination.

In sum, Plaintiff fails to provide evidence to support his claim that he was terminated on the basis of age in violation of R.C. § 4112.02(A).

### 2. Failure to Transfer

In his opposition brief, Plaintiff maintains that after it was announced that the Walton Hills plant would be closing in 2014, Ford did not offer him transfer opportunities because of his age. "Although an employer is under no obligation to transfer to another position in the company an employee whose position has been eliminated, the employer violates the ADEA when it transfers other displaced employees but does not place the plaintiff in a new position because of age discrimination." *Ercegovich*, 154 F.3d at 351.

To establish a *prima facie* case of discrimination based on a denial of the opportunity to transfer, a plaintiff must produce evidence demonstrating that (1) he is a member of a protected class, (2) at the time of his termination he was qualified for other available positions within the corporation, (3) the employer did not offer such positions to the plaintiff, and (4) a similarly-situated employee who is not a member of the protected class was offered the opportunity to transfer to an available position, or other direct, indirect, or circumstantial

13


(1:13cv2809)

evidence supporting an inference of discrimination. *Id.*

Plaintiff maintains that he can present evidence to show that similarly situated younger employees were provided with transfer opportunities while he was not. Ford argues that it is entitled to summary judgment on this claim, because the claim and the facts underlying it were not pled in the complaint. "A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005).

Upon review of the complaint, the Court agrees with the defendant that Plaintiff did not plead any specific facts that would have put Ford on notice that Plaintiff was pursuing a discrimination claim based on a failure to transfer. While the complaint indicates that Ford eventually planned to close the Walton Hills plant where Plaintiff worked (ECF No. 1-1 at PageID #: 8, ¶ 13), there is no mention that Plaintiff wished to transfer, that transfer opportunities were available at that time, that Plaintiff would have been qualified for any position that might have been open, or that Ford denied him an opportunity to transfer. Moreover, the complaint does not allege that younger similarly situated employees were offered transfer opportunities while he was not. At no point did Plaintiff move to amend the complaint, and he has not provided the defendant with fair notice of a failure to transfer claim. As such, summary judgment is appropriate on this claim. *See Guiffre v. Local Lodge No. 1124*, No. 90–3540, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (unpublished) (refusing to hear claims raised for the

14

(1:13cv2809)

first time in opposition to summary judgment because, "[h]aving received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery").

### IV.  Conclusion

For the forgoing reasons, the Court grants Defendant's motion for summary judgment. ECF No. 17.

    IT IS SO ORDERED.


| | |
|---|---|
|  March 29, 2016 |  */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |